# The First National Bank of Lincoln, Appellant, v. Lulu Sandmeyer et al., Appellees.

1. APPEALS AND ERRORS—*when cross-errors not considered.* Cross-errors not assigned but merely argued will not be considered.

2. ADMINISTRATION OF ESTATES—*statement of claim not equivalent to declaration.* A party presenting a claim against an estate is not limited in his right to recover to the particular grounds stated in such claim.

3. NEGOTIABLE INSTRUMENTS—*when act applies.* If the instrument negotiated is negotiable in character and its negotiation was effective as a commercial transaction the Negotiable Instrument Act applies to recover the rights and liabilities to such instrument.

4. NEGOTIABLE INSTRUMENTS—*when presentment, etc., essential to charge endorser.* If a note be given for the accommodation of a firm of which the endorser is a partner it is not deemed to have been given for the accommodation of such endorser within the meaning of section 132 of the Negotiable Instrument Act so far as to preclude the necessity for presentment and notice of dishonor.

Appeal from the Circuit Court of Logan county; the Hon. T. M. HARRIS, Judge, presiding. Heard in this court at the November term, 1910. Affirmed. Opinion filed October 20, 1911. *Certiorari* denied by Supreme Court (making opinion final).

BLINN & COVEY and C. EVERETT SMITH, for appellants.

KING & MILLER and BEACH & TRAPP, for appellee.

PER CURIAM.   This suit was commenced by appellant filing a claim against the estate of the testator in the county court of Logan county.   Appellees defend as executors.   The claim as filed was as follows:

"State of Illinois, Logan County, ss.   In the County Court, June term, A. D. 1909."

"Frank Hoblit, Cashier of the First National Bank of Lincoln, Illinois, being duly sworn, on oath says, that the annexed account against the estate of Frank

Frorer amounting to the sum of Five Thousand Eighty-seven dollars and Fifty cents, is just and unpaid, after allowing all just credits, and is now due and owing to the First National Bank of Lincoln, Illinois.''

On account of a certain guarantee of a certain promissory note, a copy of which is hereto attached under date of September 20, 1907, for the principal sum of $5000 with interest at the rate of six per cent per annum from date, said note being made by John D. Eveland and payable to himself and by him endorsed on the back thereof, and the payment thereof being guaranteed by the said Frank Frorer, said note having on the back thereof also the following endorsements: ''Cr. Int. to 3-1-8.'' ''Cr. 150 Int. to 9-1-8,'' ''And Cr. 150 Int. to 3-1-9.''

Omitting the provisions with respect to confession of judgment, etc., the language of the note is as follows:

''Lincoln, Ill., Sept. 2nd, 1907.

''On or before six months after date, I promise to pay to the order of myself, at the First National Bank of Lincoln, Illinois, at its office, Five Thousand dollars, value received, with interest at six per cent per annum from date, 'and seven per cent per annum after due.
                              ''John D. Eveland.''

At the time the note was presented at the appellant's bank and accepted by it, there appeared endorsed across the back of it the name of John D. Eveland, the maker-payee, and under his name was endorsed the name of Frank Frorer, appellees' testator. These endorsements were in blank.

The case proceeded to trial and judgment in the county court and an appeal was perfected in apt time and due form to the circuit court where the case was tried *de novo* by a jury.   At the close of all the evidence, appellant moved the court for an instruction di-

recting the jury to find for the plaintiff the amount of
the note and interest. Appellees moved the court for
an instruction directing the jury to find for the defend-
ants. The court denied appellant's motion, granted
that of appellees and directed a verdict in their favor,
which was so returned by the jury, and judgment was
rendered by the court thereon. Appellant excepted
and has perfected and duly prosecuted its appeal to
this court.

During the progress of the trial in the circuit court,
that court admitted the testimony of a number of wit-
nesses over appellees' objections both as to the com-
petency of the witnesses and the relevancy of the facts
testified to by them. Counsel for appellees contend
in their brief and argument that these witnesses were
incompetent under section 2 of the Evidence Act, by
reason of their interest in the event of the suit; that
the trial court erred in admitting their testimony and,
as we understand them, insist that this court should ex-
clude or disregard all of it in the consideration of this
case.

This court cannot consider cross-errors urged by an
appellee or defendant in error, unless they are as-
signed on the record. It is not sufficient to discuss
them in the brief and argument. In the case at bar
no cross-errors are assigned on the record. In Pro-
vart et al. v. Harris et al., 150 Ill. 40 (49), the court
says: ''Appellants were permitted to testify in their
own behalf over the objection of appellees. No cross-
error is assigned questioning the correctness of this
ruling and it is not, therefore, presented for decision.''
In Traynor v. Palmer, 86 Ill. 477 (489), it was said:
''The evidence * * * fully shows valid assessments
* * *, and the only question is as to its competency.
If it is competent, it is sufficient. But the question of
its competency could only arise on cross-error assigned
on the ground of its improper admission, and no cross-

errors are assigned.'' Heineck v. Grosse, 99 Ill. App.
443; Battenhausen v. Bullock, 8 Ill. App 312.     Such
testimony can only be disregarded by an appellate
court where errors have been duly assigned.     125 Ill.
573.

The note specified in the claim filed by appellant
against the estate of appellees' testate, in the county
court, with all the endorsements thereon, together with
proof that appellant was the owner of the note and
that it was wholly unpaid except as to the amounts
shown by the credits endorsed, was admitted in evi-
dence.     If we assume that it is our duty to consider
the further evidence admitted by the trial court, which
we do under the authorities above cited, that evidence
tends to prove the following facts: That Frank Frorer,
appellees' testate, for many years prior to his death,
was the president and a director of appellant, and
that he was also a member of a manufacturing firm,
doing business in the city of Lincoln, Illinois, under
the firm name and style of Charles A. Fisher & Co.;
that some time prior to September 2, 1907, the firm of
Charles A. Fisher & Co., desiring to borrow of appel-
lant $5000, procured a note to be executed by one
George A. Johnson, an employe of Charles A. Fisher
& Co., payable to himself, and this note was endorsed
in blank, by whom is not disclosed in the evidence,
negotiated at appellant's bank by Charles A. Fisher
and the proceeds placed to the credit of the firm of
Charles A. Fisher & Co., on the books of the bank. The
evidence further tends to prove that at the time of the
negotiation of the note in controversy the note of
Johnson was due and had to be taken up and to effect
this, Fisher procured John D. Eveland, another em-
ploye, to execute the note upon which this suit is based,
which after being endorsed by him was delivered to
Fisher and before being presented to the bank had
been endorsed by said Frorer, his endorsement fol-

lowing that of Eveland, on the back of the note; that in this condition Fisher presented the note to the bank and with it took up the Johnson note; that the firm of Charles H. Fisher & Co. kept an account with appellant bank and that the credits endorsed upon the note came about by the cashier of the bank, every six months, placing a credit on the note to the amount of the accrued interest and charging that amount on the books of the bank against the firm of Charles A. Fisher & Co.; that sometime after the note became due —how long the evidence does not disclose—a letter was mailed to Eveland notifying him that the note was due, and at some uncertain date after the note was due, the cashier of the bank verbally notified Frorer that his note was due; that the note was produced at a meeting of the board of directors of the bank over which Frorer was presiding as president, and that Frorer then stated to one of the directors that he was a member of the firm of Charles A. Fisher & Co.

Counsel for appellant do not now contend that Frorer was a guarantor of the note, but that under section 82 of the Negotiable Instruments Act, he was an endorser of that note and thereby his estate has become liable for its payment, and that under the evidence in this case no presentment, nor notice of dishonor were necessary. They further contend that appellant is not limited in its right to recover to the particular grounds stated in its claim as filed, notwithstanding the fact that its statement was not in any respect amended at any time after it was filed, nor any application made to the court for leave to do so.

The contention that appellant is not limited in its right to recover to the particular grounds stated in its claim, is sustained by the case of Thompson v. Black, 200 Ill. 465, and the cases therein cited.

In support of their contention that no presentment nor notice of dishonor were necessary to fix liability

of the estate for the amount due on the note, on the ground that Frorer was an endorser, they cite sections 82, 88, 98 and 132 of the Negotiable Instrument Act, and quote the parts relied upon as follows:

From sec. 82: "Where a person, not otherwise a party to an instrument, places thereon his signature in blank before delivery, he is liable as an endorser in accordance with the following rules."

"(2) If the instrument is a note or unaccepted bill payable to bearer, he is liable to all parties subsequent to the maker or drawer."

From sec. 88: "But except as herein otherwise provided, presentment for payment is necessary in order to charge the drawer or endorsers."

From sec. 98: "Presentment for payment is not required to charge an endorser where the instrument was made and accepted for his accommodation."

From sec. 132: "Notice of dishonor is not required to be given to an endorser in the following case: (3) 'Where the instrument was made or accepted for his accommodation.' "

Whatever may be true with respect to what is proper or permissible as to form and detail of procedure in this class of cases, it is true in this case so far as we are able to discern, that any right of recovery by appellant must be based upon the note as commercial paper within the meaning of the Negotiable Instrument Act and the transaction of its negotiation to appellant must be held to be a commercial transaction, and the liability of the respective parties must be determined by the provisions of that Act applicable to such paper and transactions.   When Mr. Fisher, acting on behalf of Charles H. Fisher & Company, negotiated the note in question with the cashier of appellant's bank, acting on behalf of appellant, they dealt at arm's length; there is no evidence of fraud anywhere in this transaction.

Section 88 of the Act provides that presentment for payment is necessary in order to charge the endorser,

except in the cases therein specified. Section 89 provides that when the instrument is not payable on demand, presentment must be made on the day it falls due. Section 106 provides that "notice of dishonor must be given to * * * each endorser, and any * * * endorser to whom such notice is not given is discharged." Section 120 provides that where the parties reside at the same place, notice of dishonor must be given on the day following the maturity of the note.

There is not in this record any evidence tending to prove either presentment or notice as the statute requires. Counsel for appellant, however, rely upon section 98, and clause 3 of section 132. These sections provide that presentment and notice are not necessary in order to charge an endorser "where the instrument was made and accepted for his accommodation."

The evidence proves that the note in question was made and accepted for the accommodation of the manufacturing firm of Charles H. Fisher & Company, and that Frank Frorer, the endorser, was a member of that firm. There is no evidence nor claim that the note was made or accepted for the accommodation of Frorer, individually. Counsel for appellant insist that inasmuch as he was a member of the firm for whose accommodation the note was made and accepted he was within the purview of section 98 and clause 3 of section 132, and counsel for appellees insist that he was not.

So far as we are advised this exact question has not been decided by either the Appellate or Supreme Courts of this State, nor have we found much discussion of the question elsewhere. Such an endorser does not appear to be within the letter of the statute. The language is, "where the instrument was made and accepted for his accommodation." A co-partnership firm composed of two or more persons has a legal status in many respects quite distinct from that of the separate individuals who compose it, being somewhat

in the nature of that of a business corporation with respect to the individuals who compose such corporation.

The texts and cases cited by counsel for appellant lay down and hold the general rule only that "where the instrument was made and accepted for the accommodation of the endorser, demand and notice are not necessary to fix his liability." None of them throw any light upon the particular feature upon which the question here under consideration turns.

Counsel for appellees cite the following authorities which furnish some support to their contention that such an endorser is not within the meaning of the provisions of the statute relied upon by appellant, viz.: Morris v. Husson, 4 Sandf. (N. Y.) 93; Moore v. Brungard, 5 How. (Miss.) 557; Field & Co. v. New Orleans Delta Newspaper Co., 21 La. An. 24; Parsons on Bills and Notes, p. 525; Chitty on Bills, p. 438.

Finding no reversible error in this record, the judgment of the circuit court is affirmed.

*Affirmed.*

MR. JUSTICE PUTERBAUGH took no part in the consideration of this case.